FILED
U.S. DISTRICT COURT

2008 MAY 21  A 10: 01

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

RECEIVED CLERK

JUL 0 9 2007

U.S. DISTRICT COURT

JEREL L. ELLINGTON (*Pro hac vice*)
United States Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80206
(303) 844-1363 (PHONE)   (303) 844-1350 (FAX)

FRED G NELSON (#2383), Assistant Attorney General
160 East 300 S, 5th Floor
Salt Lake City, Utah  84114
(801) 366-0285 (PHONE)   (801) 366-0292 (FAX)

KENNETH R. BARRETT
Kennecott Utah Copper Corporation
8291 West 3595 South
Magna, Utah 84044-6001

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

UNITED STATES OF
AMERICA and the STATE
OF UTAH,

Plaintiffs,

v.

KENNECOTT UTAH
COPPER CORPORATION,

Defendant.

Case: 2:07cv00485
Assigned To : Kimball, Dale A.
Assign. Date : 7/9/2007
Description: USA et al v. Kennecott
Utah Copper

## RD/RA CONSENT DECREE

Exhibit A

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 11 |
| III. | PARTIES BOUND | 11 |
| IV. | DEFINITIONS | 12 |
| V. | GENERAL PROVISIONS | 20 |
| VI. | PERFORMANCE OF THE WORK BY KUCC | 24 |
| VII. | REMEDY REVIEW | 28 |
| VIII. | EPA AND UDEQ ROLES | 29 |
| IX. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 30 |
| X. | ACCESS AND INSTITUTIONAL CONTROLS | 31 |
| XI. | REPORTING REQUIREMENTS | 37 |
| XII. | APPROVAL OF PLANS AND OTHER SUBMISSIONS | 38 |
| XIII. | PROJECT COORDINATORS | 41 |
| XIV. | ASSURANCE OF ABILITY TO COMPLETE WORK | 43 |
| XV. | CERTIFICATION OF COMPLETION | 46 |
| XVI. | EMERGENCY RESPONSE | 50 |
| XVII. | PAYMENTS FOR RESPONSE COSTS | 51 |
| XVIII. | INDEMNIFICATION AND INSURANCE | 56 |
| XIX. | FORCE MAJEURE | 58 |
| XX. | DISPUTE RESOLUTION | 60 |
| XXI. | STIPULATED PENALTIES | 65 |

XXII.  COVENANTS NOT TO SUE BY THE PLAINTIFFS ................................. 72

XXIII. COVENANTS BY KUCC .................................................. 80

XXIV. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ......................... 83

XXV.  ACCESS TO INFORMATION ............................................... 85

XXVI. RETENTION OF RECORDS ................................................ 87

XXVII. NOTICES AND SUBMISSIONS ............................................. 87

XXVIII. EFFECTIVE DATE ..................................................... 89

XXIX. RETENTION OF JURISDICTION ............................................ 89

XXX. APPENDICES .......................................................... 90

XXXI. COMMUNITY RELATIONS ................................................. 90

XXXII. MODIFICATION ....................................................... 91

XXXIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ......................... 92

XXXIV. SIGNATORIES/SERVICE ................................................ 92

XXXV. FINAL JUDGMENT ...................................................... 93

I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of

the United States Environmental Protection Agency ("EPA"), and the State of Utah ("State"), by

and through the Utah Department of Environmental Quality ("UDEQ"), filed a joint complaint in

this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607. The United States

in the joint complaint seeks: (1) reimbursement of costs incurred by EPA and the Department of

Justice for response actions at that portion of the Kennecott South Zone Site known as

groundwater Operable Unit 2 ("OU2"), in Salt Lake County, Utah, together with accrued interest;

and (2) performance of response actions addressing the Zone A Portion of OU2 consistent with

the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"). The State in the joint

complaint seeks a declaration of KUCC's liability for costs that UDEQ may incur in the future in

overseeing response actions at the OU2 Site pursuant to Section 107 of CERCLA, 42 U.S.C. §

9607, and for the performance of response actions pursuant to the Utah Hazardous Substances

Mitigation Act, UCA Section 19-6-301 et seq., or UCA Section 19-6-115 of the Utah Solid and

Hazardous Waste Act. The Complaint also seeks reimbursement of past costs incurred by EPA

and the Department of Justice for certain other operable units at the Kennecott South Zone Site

and the Kennecott North Zone Site.

B.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA

notified the United States Department of Interior ("DOI") of negotiations with potentially

responsible parties regarding the release of hazardous substances that may have resulted in injury

to the natural resources under Federal trusteeship and provided DOI with an opportunity to participate in the negotiation of this Consent Decree.

     C.     The named defendant, Kennecott Utah Copper Corporation ("KUCC" or "Settling Defendant") is actively mining, milling, and smelting ore in the Oquirrh Mountains south of the Great Salt Lake. KUCC's operation principally includes: (i) a large open pit copper mine (the "Bingham mine") and associated waste rock dumps; (ii) a concentrator which processes ore from the Bingham pit; (iii) a smelter where copper anodes are produced from copper concentrate; (iv) a refinery that produces copper cathodes and precious metals including gold and silver; (v) a large tailings impoundment near the Great Salt Lake (the "North Tailings Facility") where tailings from the concentrator are slurried; (vi) conveyance systems connecting all the preceding facilities; and (vii) miscellaneous and ancillary facilities (historic, environmental response, or operation-related). The State regulates various aspects of KUCC's active mining operation pursuant to various UPDES, groundwater protection, and other permits.

     D.     By entering into this Consent Decree neither KUCC, nor any of its affiliates, successors or assigns, and their directors, officers, or employees, admit any liability to the Plaintiffs or any other person or entity arising out of the transactions or occurrences alleged in the joint complaint, nor any of the factual allegations set forth in the joint complaint, and do not acknowledge that the release or threatened release of hazardous substances at or from the OU2 Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

-2-

E.     In 1986 the State filed a lawsuit against KUCC in the United States District Court for the District of Utah (Civil Action No. 86-C-0902G) seeking natural resource damages for injuries to the groundwater impaired by releases of hazardous substances from KUCC's past mining operations at or near the Bingham mine and the past diversion of the flow of Bingham Creek.  The Salt Lake County Water Conservancy District intervened.  That action was resolved by a consent decree among the State and its Trustee for the State's natural resources, the Salt Lake County Water Conservancy District, and KUCC.  The consent decree was approved and entered by the Court on August 21, 1995 (the "NRD CD").  The NRD CD required, among other things, that KUCC establish a trust fund, to be administered by the Trustee, funded by a $9 million cash contribution and by an initial $28 million irrevocable letter of credit ("ILC") that escalated annually.  The NRD CD provided that KUCC could receive a reduction in the amount of the ILC by providing treated groundwater to a municipal and industrial water purveyor in a manner that met specific requirements of the credit provisions.  Pursuant to the NRD CD KUCC was also required to complete source control measures, described as the eastside collection system.

F.     KUCC and the Jordan Valley Water Conservancy District ("JVWCD" or the "District"), the successor to the Salt Lake County Water Conservancy District, and the State, through the NRD Trustee, entered into an agreement dated August 31, 2004 (the "3-Party Agreement"), regarding a project for the development and construction of a groundwater extraction and treatment system (the "NRD Project").  Pursuant to the 3-Party Agreement KUCC

is required to build, own, and operate a reverse osmosis ("RO") water treatment plant to treat sulfate contaminated water from Zone A. A similar RO water treatment plant to treat water from Zone B will be funded by KUCC and built, owned, and operated by the JVWCD. Under the NRD Project it is expected that the Zone A and Zone B RO water treatment plants will deliver drinking water to a purveyor of municipal and industrial water to the public in the affected area for a period of approximately 40 years.

G. In 1994 EPA proposed listing two geographic areas on the NPL (referred to as the Kennecott "South Zone" and "North Zone" Sites). The "South Zone" Site, as proposed for listing by EPA, includes the Bingham mine, concentrator, numerous historic facilities, and impacted groundwater. The "North Zone" Site, as proposed for listing by EPA, includes the area closest to the Great Salt Lake, including the smelter, refinery, past process areas, the Magna tailings facilities, and isolated areas of impacted groundwater. There are a total of 24 operable units at the combined South Zone and North Zone sites, some of which are not associated with KUCC or its operations. This Consent Decree solely addresses impacted groundwater within the OU2 Site.

H. The proposed listing on the NPL was deferred by agreement of the parties as expressed in a September 27, 1995 Memorandum of Understanding ("MOU"). EPA, KUCC, and UDEQ subsequently worked cooperatively and closely together for the streamlined environmental investigation and cleanup of the South Zone and North Zone Sites. Pursuant to its commitment in the MOU, in 1995 KUCC commenced a Remedial Investigation and Feasibility

-4-

Study ("RI/FS") for OU2 pursuant to 40 C.F.R. § 300.430. KUCC completed a RI/FS Report on March 16, 1998.

      I.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the Proposed Plan for Remedial Action on July 31, 2000, in the Salt Lake Tribune and Deseret News, the local newspapers of general circulation. EPA provided an opportunity for written and oral comments from the public on the Proposed Plan for Remedial Action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Assistant Regional Administrator, Office of Ecosystems Protection and Remediation, based the selection of the response action.

      J.      EPA issued a record of decision ("ROD") for OU2, with which the State concurred, on December 13, 2000. The ROD selected a health-based remedial action level of 1500 ppm for sulfate in the groundwater. The ROD also differentiated two plumes of groundwater contamination, referred to as the "Zone A" and "Zone B" plumes, within OU2. The two plumes are depicted on Figure 2 of the ROD. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA. EPA subsequently modified the remedy, with the concurrence of the State, by two Explanations of Significant Differences ("ESD"), one dated June 23, 2003, and the second dated June 2007. The ROD, as modified by the ESDs, will be referred to collectively as the "OU2 ROD."

K.       The Zone B plume comprises that portion of the shallow aquifer which was impacted by the past diversion of the intermittent flow of Bingham Creek, downstream of Bingham Canyon, and the past mining operations of KUCC and others. The Zone B plume contains waters with sulfate levels greater than the State's secondary drinking water standard of 250 ppm but less than EPA's remedial action level of 1,500 ppm, and has a neutral pH. Pursuant to the NRD CD and the 3-Party Agreement, the Zone B plume is to be pumped and the extracted water treated to meet drinking water quality standards and delivered to a purveyor for municipal use. Because of the NRD CD and work thereunder, the OU2 ROD did not select a remedy for the Zone B plume.

L.       The Zone A plume consists of that portion of the shallow aquifer contaminated by acid leachates from past leaching of the waste rock dumps and other contaminates from the Bingham Canyon mining district. Residual contamination from those past activities is now intercepted by the eastside collection system. The Zone A plume has concentrations of sulfate that exceed 1,500 ppm. The Zone A plume includes an acidic "core area" which is currently approximately two square miles in size and which has the highest concentrations of sulfate and some metals of concern. The OU2 ROD selected a long-term remedy for the Zone A plume, providing for a transition from mining to a post-mining closure scenario. The OU2 ROD also coordinated CERCLA remedial actions with activities to be performed pursuant to the NRD CD or State permits and programs already in place.

-6-

M.    The OU2 ROD provides for the following elements of the remedy for the OU2

Site:

(a)    monitoring source control measures, known as the eastside collection

system, which KUCC constructed and operates pursuant to Permit No. UGW350010

(Kennecott Bingham Canyon Mine and Water Collection System) issued and

administered by UDEQ's Ground Water Protection Program;

(b)    preventing human exposure by limiting access to contaminated

groundwater through institutional controls administered by the Utah State Engineer

(Division of Water Rights) ("State Engineer") and point-of-use management;

(c)    containing the acid plume by barrier wells at the leading edge of the plume

and putting the extracted water to one or more beneficial uses such as feed water for the

NRD Project or make-up water for KUCC's industrial processes;

(d)    reducing the areal extent of the acid plume by extraction wells within the

core area;

(e)    during the period of time prior to mine closure, routing water extracted

from the core area of the acid plume to the existing pipeline which KUCC uses to slurry

tailings, having excess acid neutralizing capacity, to the North Tailings Facility, provided

that the residuals combination meets applicable requirements prior to being discharged;

(f)     developing a Closure Transition Plan to manage, as applicable, treatment concentrates and extracted acid plume waters when the mine, mill and associated slurry pipeline, or other mining infrastructure or facilities, will no longer be operated; and

(g)     long-term monitoring of the plume and the effectiveness of active treatment and natural attenuation until the remedial action objectives are met.

N.     The status of implementation of response activities selected in the OU2 ROD as of the date of the lodging of this Consent Decree is as follows.

(a)     In June, 2002, the State Engineer implemented certain institutional controls under state groundwater management plans.

(b)     KUCC submitted a Final Remedial Design for Remedial Action Report in May of 2003, which EPA approved, in consultation with UDEQ, on July 22, 2003.

(c)     KUCC has certified completion of construction of the following components of the OU2 ROD and Final Design for Remedial Action, for which EPA, in consultation with UDEQ, issued a certificate of completion to KUCC:  (i) installation of barrier wells at the leading edge of the Zone A plume; (ii) installation of extraction wells within the core area of the Zone A plume; and (iii) installation of the piping and related infrastructure connecting the various components of the selected remedy.

(d)     KUCC has commenced operation and maintenance activities.

(e)     The remaining operation, maintenance, and replacement ("OM&R")

activities include the continued operation and maintenance, and as necessary replacement,

of components of the Remedial Action to contain and eliminate the Zone A plume as

described in the OM& R Plan attached as Appendix C until final cleanup standards are

met.

O.     Kennecott Land Company, a Delaware Corporation, and its affiliated companies,

including OM Enterprises Company, a Utah corporation ("OM Enterprises") founded a master

planned community of South Jordan, Utah known as Daybreak. On or about November 30, 2001,

by a deed recorded in the Official Records of Salt Lake County, Utah on December 4, 2001 as

Instrument No. 8080014, Book 8536, Page 0682, KUCC conveyed to OM Enterprises certain

lands in the South Jordan area situated in Township 3 South, and Ranges 1 and 2 west, Salt Lake

Base & Meridian.  By an Amended and Restated Deed dated August 9, 2002 and recorded in the

Official Records of Salt Lake County, Utah on August 23 2002, as Instrument No. 8330941,

Book 8636, Page 9160, KUCC and OM Enterprises established, among other things; easements

for placement of, and access to, monitoring wells, extraction wells, and pipelines for

implementation of the Final Remedial Design for Remedial Action Report, and also a prohibition

of drilling furthering the institutional controls component of OU2 ROD.

P.     The Parties expect that much of the surface area above the Zone A plume will be

converted to residential and other non-mining/industrial uses over time. Section 107(r)(1) of

CERCLA, 42 U.S.C. § 9607(r)(1), provides bona fide prospective purchasers whose potential

liability for a release or threatened release is based solely on the purchaser's being considered to be an owner or operator of a facility shall not be liable as long as the bona fide prospective purchaser does not impede the performance of a response action or natural resource restoration.

Q.    Based on the information presently available to EPA and UDEQ, they believe that the Work will be properly and promptly conducted by KUCC if conducted in accordance with the requirements of this Consent Decree and its appendices.  Because of the past cooperative working relationship between EPA, UDEQ, and KUCC related to the environmental investigation and cleanup activities at the South Zone and North Zone sites, EPA and UDEQ intend to seek to coordinate and streamline oversight activities by, among other things, defining specific areas of oversight and other responsibility pursuant to a Site Specific Enforcement Agreement, and annually meeting with KUCC to review its work during the prior and upcoming year and an appropriate level and estimated cost of overseeing such activities.

R.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the OU2 ROD and the work to be performed by the Settling Defendant under this Consent Decree shall constitute a response action taken or ordered by the President.

S.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the OU2 Site and will avoid prolonged and

complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. Jurisdiction

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over KUCC.  Solely for the purposes of this Consent Decree and the underlying complaints, KUCC waives all objections and defenses it may have to jurisdiction of the Court or to venue in this District.  KUCC shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. Parties Bound

2.      This Consent Decree applies to and is binding upon the United States, the State, and upon KUCC and its successors and assigns.  Any change in ownership or corporate status of KUCC including, but not limited to, any transfer of assets or real or personal property, shall in no way alter KUCC's responsibilities under this Consent Decree.

3.      KUCC shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing KUCC with respect to the OU2 Site or the Work and shall condition all contracts

-11-

entered into hereunder upon performance of the Work in conformity with the terms of this

Consent Decree. KUCC or its contractors shall provide written notice of the Consent Decree to

all subcontractors hired to perform any portion of the Work required by this Consent Decree.

KUCC shall nonetheless be responsible for ensuring that their contractors and subcontractors

perform the Work contemplated herein in accordance with this Consent Decree. With regard to

the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall

be deemed to be in a contractual relationship with KUCC within the meaning of Section

107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree

which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are

used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the

following definitions shall apply:

"2006 Dollars" shall mean an amount that is escalated to a later year by means of the

Consumer Price Index – All Urban Consumers (CPI-U), U.S. City Average, all items, base

period 1982-84 = 100, as published by the U.S. Department of Labor, Bureau of Labor Statistics.

Values that are expressed in this Consent Decree as "2006 Dollars" will be escalated on an

annual basis for the period February 1 through January 31. The reference period shall be the

2006 annual CPI-U, and an annual adjustment shall be calculated by multiplying the amount to be escalated by the quotient of the most recent annual CPI-U divided by the 2006 annual CPI-U. For example, for the period February 1, 2008 to January 31, 2009, an amount stated in this Consent Decree would be multiplied by the quotient of the 2007 annual CPI-U divided by the 2006 annual CPI-U. In the event the CPI-U ceases to be published or is materially altered, the Parties shall mutually agree upon an alternative index comparable to the CPI-U.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Cleanup Levels" shall mean the applicable measures of contamination of the Zone A plume as set forth at pages 87 -89 of the December 13, 2000 ROD for purposes of determining when, as applicable:  (i) KUCC shall no longer be required to actively  pump and treat the Zone A plume but thereafter monitor the natural attenuation of the Zone A plume; and (ii) when work is deemed complete and KUCC shall no longer be required to monitor the natural attenuation of the Zone A plume.

"Closure Transition Plan" shall mean that plan, approved by EPA, in consultation with UDEQ, and following as necessary an amendment to the OU2 ROD pursuant to CERCLA and the NCP, for the replacement of any components of the Remedial Action, or other changes to the Remedial Action, necessary in anticipation of the transition from active mining to mine closure by KUCC and as described in the OU2 ROD and OM&R Plan.

"Compliance Monitoring Well" shall mean any well selected to measure containment of the Zone A Plume as set forth in the OM&R Plan.

"Consent Decree" shall mean this Decree and all appendices attached hereto listed in Section XXX Appendicies). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 105.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Final Design for Remedial Action" shall mean that document developed by KUCC for the remedial action selected in the OU2 ROD which was approved by EPA on July 22, 2003.

"Future Response Costs" shall mean all costs, including, but not limited to, direct costs and indirect costs (at the indirect cost rate applicable during the fiscal year in which the costs were incurred), that the United States incurs after November 15, 2005 in reviewing or developing

-14-

plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections XVIII (Indemnification and Insurance), X (Access and Institutional Controls), including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation, XVI (Emergency Response), and Paragraph 87 (Work Takeover) of Section XXI (Stipulated Penalties).

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"KUCC" shall mean the Settling Defendant, Kennecott Utah Copper Corporation, a corporation organized under the laws of Delaware, and its successors and assigns.

"Monitoring Well" shall mean any well selected to monitor groundwater in and around the Zone A Plume as set forth in the OM&R Plan.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NRD CD" shall mean the consent decree entered into by and between the NRD Trustee, the District, and KUCC dated August 21, 1995 and which was approved and entered by the United States District Court for the District of Utah in Civil Action No. 86-C-0902G.

"Operation, Maintenance, and Replacement" or "OM&R" shall mean all activities required to maintain the effectiveness of the Remedial Action, and as appropriate to replace components of the Remedial Action over time and prior to mine closure, as required under the OM&R Plan, or as applicable the Closure Transition Plan.

"OM&R Plan" shall mean the statement of work for implementation of OM&R activities as set forth in Appendix C and as it may be modified in accordance with this Consent Decree.

"OU2 ROD" shall mean the EPA Record of Decision relating to OU 2 at the South Zone site signed on December 13, 2000, by the Assistant Regional Administrator, Office of Ecosystems Protection and Remediation, EPA Region 8, and all attachments thereto, and as modified the "Explanations of Significant Differences" or "ESDs" signed by EPA on June 23, 2003, to which the UDEQ concurred on August 20, 2003, and signed by EPA on June 12, 2007 to which UDEQ concurred on June 8, 2007, describing changes in and

-16-

clarifying the implementation of the remedy. The Record of Decision and ESDs are attached as Appendix B.

"OU2 Site" shall mean that portion of OU2 of the Kennecott South Zone Site incorporating the areal extent of the Zone A plume of groundwater contamination for which EPA selected a remedial action by the OU2 ROD. The OU2 Site is located in Salt Lake County, Utah and encompasses the groundwater beneath portions of the municipalities of West Jordan, South Jordan, and unincorporated Salt Lake County. A map is attached as Appendix A which (i) depicts the OU2 Site as of December 2000 and which for convenience also depicts (ii) the location of wells, pipelines, and other facilities constructed pursuant to the Final Design for Remedial Action and for which KUCC has established easement rights with respect to property it does not own or control; (iii) the locations of current Compliance Monitoring Wells used to measure containment of the Zone A plume; and (iv) the area where KUCC will record a drilling restriction pursuant to Paragraph 28 and a notice to successors-in-title pursuant to Paragraph 9. The areal extent of groundwater contamination is expected to diminish over time as the remedy is implemented. EPA, or as applicable UDEQ, may approve modifications to the depiction of the OU2 Site as part of the periodic review process set forth in Section VII (Remedy Review).

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States, the State by and through UDEQ, and KUCC.

-17-

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurred at or in connection with the Kennecott South Zone Site or Kennecott North Zone Site, including but not limited to the OU2 Site, through November 15, 2005, inclusive of Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the Cleanup Levels and other measures of achievement of the remedial action objectives and goals as set forth in the OU2 ROD, and any modified standards selected by EPA, in consultation with the State, in accordance with CERCLA and the NCP and applicable requirements of this Consent Decree.

"Plaintiffs" shall mean the United States and the State by and through UDEQ.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq*. (also known as the Resource Conservation and Recovery Act).

"Remedial Action" shall mean those activities, except for OM&R, which KUCC completed to implement the OU2 ROD and the Final Design for Remedial Action, and with respect to which EPA, in consultation with UDEQ, on June 7, 2007 issued an acceptance of KUCC's certification of completion of such activities.

"Replacement Activities" shall mean those activities KUCC is required to perform pursuant to the Closure Transition Plan developed and approved pursuant to the requirements of

-18-

this Consent Decree, including the replacement or upgrading of existing facilities or the construction of new facilities, in order to continue the implementation of the remedy as set forth in the OU2 ROD, as it may be amended in accordance with CERCLA and the NCP.

"Section" shall mean any portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean KUCC.

"State" shall mean the State of Utah by and through UDEQ.

"UDEQ" shall mean the State of Utah's Department of Environmental Quality and any successor departments or agencies of the State.

"United States" shall mean the United States of America.

"Waste Material" shall mean (i) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and (ii) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33), which is/are treated, generated, managed, or disposed of to implement any portion of the remedial action described in the OU2 ROD, to implement the OM&R Plan, or any requirement of this Consent Decree, consisting of sludges or other treatment residuals from OM&R activities involving the extraction and treatment of acid core water within or from the core area of the Zone A plume.

"Work" shall mean all activities KUCC is required to perform under this Consent Decree, including without limitation all OM&R activities, but shall not include those activities as required by Section XXVI (Retention of Records).

## V. GENERAL PROVISIONS

5.    Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the OU2 Site by the implementation of response actions at the OU2 Site by KUCC, to reimburse response costs of the United States, and to resolve the claims of Plaintiffs against KUCC as provided in this Consent Decree.

6.    Commitments by KUCC. KUCC shall finance and perform the Work in accordance with this Consent Decree, the OU2 ROD, the OM&R Plan, the Closure Transition Plan, and other plans, standards, specifications, and schedules set forth herein or developed by KUCC and approved by EPA, or as applicable UDEQ, pursuant to this Consent Decree. KUCC shall also reimburse the United States for Past and Future Response Costs as provided in this Consent Decree.

7.    Compliance With Applicable Law. All activities undertaken by KUCC pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. KUCC must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the OU2

-20-

ROD, OM&R Plan, Closure Transition Plan, and any other work plan approved pursuant to this Consent Decree. The activities conducted pursuant to this Consent Decree, if approved by EPA, or as applicable UDEQ, shall be considered to be consistent with the NCP.

      8.    <u>Permits</u>.

      a.    Subject to the following Paragraph 8.b., as provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on the OU2 Site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work on the OU2 Site).

      b.    The OU2 ROD selected remedial action components coordinated with and utilizing certain activities already addressed in agreements between KUCC and the State furthering the NRD Consent Decree and in the following permits issued by the State (collectively the "State-lead activities"): (a) Permit No. UGW350010 (Kennecott Bingham Canyon Mine and Water Collection System) issued and administered by UDEQ's Ground Water Protection Program; (b) the NRD Project (the construction of the Zone A RO water treatment plant and provision of drinking water quality water); (c) Permit No. UGW 350017 (Copperton Concentrator and pipeline (permit by rule UAC R317-6-6.2)), and (d) the discharge of tailings to the North Tailings Facility, and discharge of effluent from that facility to the Great Salt Lake, pursuant to Permit Nos. UT0000051 and UGW 350011. The United States reserves all rights

and authorities EPA may have to modify the OU2 ROD, including modifying the boundaries of

the OU2 Site, in accordance with CERCLA and the NCP. The State reserves all rights and

authorities it may have to object to any such action by EPA that might affect the State-lead

activities or State permitting requirements. KUCC reserves all objections and defenses it may

have to any such actions by either EPA or the State.

      c.     KUCC may seek relief under the provisions of Section XIX (Force

Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a

failure to obtain, or a delay in obtaining, any permit required for the Work.

      d.     This Consent Decree is not, and shall not be construed to be, a permit

issued pursuant to any federal or State statute or regulation.

     9.     Notice to Successors-in-Title.

      a.     With regard to the property owned or controlled by KUCC which overlies

or is in close proximity to the OU2 Site as depicted on Appendix A, KUCC shall within 30 days

after the Effective Date of this Consent Decree, submit to EPA for review and approval, with a

concurrent copy to UDEQ, a notice to be filed with the Recorder's Office, Salt Lake County,

State of Utah, which shall provide notice to all successors-in-title that such property is part of the

OU2 Site or is being or may be used for implementation of the OU2 ROD, and that KUCC

entered into a Consent Decree requiring implementation of the remedy. Such notice shall

identify the United States District Court in which the Consent Decree was filed, the name and

-22-

civil action number of this case, and the date the Consent Decree was entered by the Court. KUCC shall record the notice within 15 days of EPA's approval of the notice. KUCC shall provide EPA with a certified copy of the recorded notice, with a concurrent copy to UDEQ, within 15 days of recording such notice. The requirements of this Paragraph 9.a. shall not apply to easements retained by KUCC for the specific purpose of assuring the performance of Work under this Consent Decree, and to which EPA and UDEQ, or their contractors, are provided access pursuant to the terms of this Consent Decree.

b. At least 30 days prior to the conveyance of any interest in such property as is described in the preceding Paragraph 9.a., including, but not limited to, fee interests, leasehold interests, and mortgage interests, KUCC shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by which an interest in real property has been conveyed that confers a right of access to the OU2 Site (hereinafter referred to as "access easements") pursuant to Section X (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section X (Access and Institutional Controls). At least 30 days prior to such conveyance, KUCC shall also give written notice to EPA, with a concurrent copy to UDEQ, of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

c.      In the event of any such conveyance, KUCC's obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section X (Access and Institutional Controls) of this Consent Decree, shall continue to be met by KUCC. In no event shall the conveyance release or otherwise affect the liability of KUCC to comply with all provisions of this Consent Decree, absent the prior written consent of EPA. If the United States, in consultation with the State, approves, the grantee may perform some or all of the Work under this Consent Decree.

VI. PERFORMANCE OF THE WORK BY KUCC

10.     OM&R Activities.

a.      Within 10 days after the Effective Date of this Consent Decree, KUCC shall implement the activities required under the OM&R Plan attached as Appendix C for the remedy as set forth in the OU2 ROD in order to achieve the Performance Standards.

b.      KUCC shall complete all Replacement Activities in accordance with an approved Closure Transition Plan.

c.      KUCC shall continue to implement the OM&R activities until the Cleanup Levels are achieved or amended in accordance with CERCLA and the NCP.

11.    Modification of the OM&R Plan, Closure Transition Plan, or Related Work Plans.

a.    If EPA determines, in consultation with UDEQ, that modification to the work specified in the OM&R Plan, Closure Transition Plan, or any related work plan, is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy as selected in the OU2 ROD, EPA may require that such modification be incorporated in the OM&R Plan, Closure Transition Plan, and/or such work plan(s). A modification may only be required pursuant to this Paragraph, however, to the extent that it is consistent with the scope of the remedy selected in the OU2 ROD, or as the remedy or any components of the remedial action may be modified in accordance with CERCLA and the NCP. Furthermore, so long as the OU2 plume is contained and has not moved beyond a point of compliance, and KUCC is meeting the minimum extraction rate as set forth in the OU2 ROD, EPA may not unilaterally modify the OM&R Plan. Any such modifications hereunder shall not unnecessarily interfere with KUCC's on-going mining or milling operations.

b.    If KUCC objects to any modification determined by EPA, in consultation with UDEQ, to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XX (Dispute Resolution), Paragraph 66 (record review). The OM&R Plan and/or related work plans shall be modified in accordance with final resolution of the dispute.

c.    KUCC shall implement any work required by any modifications incorporated in the OM&R Plan, Closure Transition Plan, and/or in any work plans or which is/are developed pursuant to the modified work plans in accordance with this Paragraph.

-25-

d.      Nothing in this Paragraph shall be construed to limit either: the authority of EPA, in consultation with UDEQ, to require performance of further response actions as otherwise provided in this Consent Decree; or the right of the Parties to mutually agree to modify the work specified in the OM&R Plan, Closure Transition Plan, or other applicable work plan.

12.      KUCC acknowledges and agrees that nothing in this Consent Decree, the OU2 ROD, the Final Design for Remedial Action, the OM&R Plan, Closure Transition Plan, or any other related work plan(s) constitutes a warranty or representation of any kind by Plaintiffs that KUCC's compliance with the work requirements will achieve the Performance Standards.

13.      Off-site shipment of Waste Material.

a.      KUCC shall, prior to any shipment of Waste Material from the OU2 Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator and the UDEQ Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any shipments when the total volume of all such shipments will not exceed 10 cubic yards.

b.      KUCC shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. KUCC shall

-26-

provide such information as soon as practicable after entering into a contract for the disposal of Waste Material and before the Waste Material is actually shipped.

        c.      KUCC shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

        d.      Before shipping any Waste Material from the OU2 Site to an off-site location, KUCC shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. KUCC shall only send Waste Material from the OU2 Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence. For purposes of this Paragraph 13.d. only, and without bringing such facilities or locations within the scope of the permit waiver described in Paragraph 8.a.. the following areas on property of KUCC or an affiliated company shall not be considered an "off-site location:" tailings impoundments, waste rock dumps. mined out pits, and similar areas that have been impacted by mining in the Oquirrh Mountains south of the Great Salt Lake, provided that such location(s) is (are) approved by EPA in consultation with the State and subject to the provisions of Paragraph 8.b., for the placement of Waste Material in the OM&R Plan, Closure Transition Plan, or other applicable decision document issued in accordance with CERCLA and the NCP.

## VII. Remedy Review

14.     Periodic Review. KUCC shall conduct the studies and investigations necessary for EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, and any applicable regulations.

15.     EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action or the OM&R activities is/are not protective of human health and the environment, EPA, in consultation with UDEQ, may select further response actions at or relating to the OU2 Site in accordance with the requirements of CERCLA and the NCP.

16.     Opportunity To Comment. KUCC and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

17.     KUCC's Obligation To Perform Further Response Actions. If EPA selects further response actions for the OU2 Site, KUCC shall undertake such further response actions to the extent that the reopener conditions in Paragraphs 81, 82, or 83 (United States' reservations of liability based on unknown conditions or new information) are satisfied. KUCC may invoke the procedures set forth in Section XX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraphs 81, 82, or 83 are satisfied, (2) EPA's determination that

the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 66 (record review).

18.     Submissions of Plans. If KUCC is required to perform the further response actions pursuant to Paragraph 17, KUCC shall submit a plan for such work to EPA, with a copy to UDEQ, for approval in accordance with the procedures set forth in Section VI (Performance of the Work by KUCC) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII. EPA and UDEQ Roles.

19.     EPA may, pursuant to the terms of a Site Specific Enforcement Agreement ("SSEA") mutually agreed to with UDEQ and which addresses all or parts of the South Zone and North Zone sites, designate and authorize UDEQ to oversee and to the extent provided in the SSEA approve KUCC's performance of Work. EPA and/or UDEQ shall provide a copy of the initial SSEA to KUCC prior to the lodging of this Consent Decree and a copy of any future amendments or replacements to the SSEA preferably prior to, and in no event later than fifteen days after, the effective date of such amendment or replacement of the SSEA, in accordance with Section XXVIII (Effective Date).

20.     Notwithstanding UDEQ's role in overseeing KUCC's Work, EPA shall retain its authority: (a) to determine, as part of the periodic review process described in Section VII (Remedy Review), whether the Remedial Action, and as it is being implemented pursuant to the OM&R Plan, the Closure Transition Plan, or related work plan, is protective of human health and the environment as required by Section 121(c) of CERCLA, and any applicable regulations; (b) to modify the OU2 ROD and any remedial action objectives or performance standards or to select further response actions for the OU2 Site; (c) to authorize or require any adjustments to KUCC's provision of financial assurance for the performance of Work as provided in Section XIV (Assurance of Ability to Complete Work); (d) to decide whether a force majeure event has occurred; (e) to decide disputes in accordance with Section XX (Dispute Resolution), and (f) over any matters that as a matter of law EPA is required to administer.  EPA will consult with and allow for the meaningful involvement of the State in all such matters.  The State reserves all rights it has pursuant to Sections 114 and 121 of CERCLA, 42 U.S.C. §§ 9614 and 9621, and nothing in this Consent Decree shall diminish those rights.

## IX. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

21.     KUCC shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with the Quality Assurance Project Plan ("QAPP"), described in the OM&R Plan.

22.    Upon request, KUCC shall allow split or duplicate samples to be taken by EPA and UDEQ or their authorized representatives.  In addition, EPA and UDEQ shall have the right to take any additional samples that EPA or UDEQ deems necessary.  Upon request, EPA and UDEQ shall allow KUCC to take split or duplicate samples of any samples they take as part of overseeing KUCC's implementation of the Work.

23.    Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

X. ACCESS AND INSTITUTIONAL CONTROLS

24.    With regard to any property (including easement rights) owned or controlled by KUCC (i) which overlies or is in close proximity to the OU2 Site, (ii) where facilities or infrastructure necessary for implementation of the OU2 ROD and OM&R activities are or will be located, or (iii) where any reports, data, or information regarding or related to the performance of OM&R activities are located, commencing on the date of the lodging of this Consent Decree KUCC shall:

a.    Provide the United States and its representatives, including, but not limited to EPA, the United States Geological Survey, the United States Army Corps of Engineers, and their contractors, the State, including UDEQ, and its contractors, with access at all reasonable

-31-

times to such property or property rights for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

      (1)    Monitoring the Work;

      (2)    Verifying any data or information submitted to the United States;

      (3)    Conducting investigations relating to contamination at or near the OU2 Site;

      (4)    Obtaining samples;

      (5)    Assessing the need for, planning, or implementing additional response actions at or near the OU2 Site;

      (6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

      (7)    Implementing the Work pursuant to the conditions set forth in Paragraph 87 (Work Takeover) of this Consent Decree;

      (8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by KUCC or their agents, consistent with Section XXIV (Access to Information);

      (9)    Assessing KUCC's compliance with this Consent

-32-

Decree; and

(10) Determining whether the OU2 Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

b. Refrain from using such property in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.

25. In exercising their right of access pursuant to the preceding Paragraph 24, EPA and UDEQ employees, contractors, or representatives shall provide KUCC reasonable notice and reasonably try to adhere to any requests by KUCC personnel to comply with generally applicable health and safety requirements of the facility, to not unnecessarily disrupt KUCC's on-going mining operations, and to be escorted by a KUCC representative; provided that, the integrity of the inspection is not jeopardized, its quality diminished, or results affected, and, if requested, they may sign documents that indicate they will comply with safety requirements and/or that they have received safety or other training. However, nothing in this paragraph is intended to limit the exercise of any rights of entry or access of EPA or UDEQ pursuant to federal or state law.

26. If any portion of the OU2 Site or any other property where access or land/water use restrictions are needed to implement this Consent Decree is owned or controlled by persons other than KUCC, KUCC shall use its best efforts to secure from such person(s) as appropriate:

a.      an agreement to provide access thereto for KUCC, as well as for the

United States on behalf of EPA and the State on behalf of UDEQ, as well as their representatives

(including contractors), for the purpose of conducting any activity related to this Consent Decree

including, but not limited to, those activities listed in Paragraph 24.a of this Consent Decree;

b.      an agreement, enforceable by KUCC and the United States, to refrain from

using the OU2 Site, or such other property, in any manner that would interfere with or adversely

affect the implementation, integrity, or protectiveness of the remedial measures to be performed

pursuant to this Consent Decree; or

c.      the execution and recordation in the Recorder's Office of Salt Lake

County, State of Utah, of an easement, running with the land, that (i) grants a right of access for

the purpose of conducting any activity related to this Consent Decree including, but not limited

to, those activities provided for in Paragraph 24.a of this Consent Decree, and (ii) grants the right

to enforce the land/water use restrictions or other restrictions that EPA, in consultation with the

State, determines are necessary to implement, ensure non-interference with, or ensure the

protectiveness of the remedial measures to be performed pursuant to this Consent Decree. The

access rights and/or rights to enforce land/water use restrictions shall be granted to the State and

its representatives. KUCC will promptly submit to EPA or as applicable UDEQ for review and

approval with respect to such property:

(1)     a draft easement that is enforceable under the laws of the State of

Utah, and

-34-

(2)     a current title insurance commitment, or some other evidence of

title acceptable to EPA, or as applicable UDEQ, which shows title to the land

described in the easement to be free and clear of all prior liens and encumbrances

(except when those liens or encumbrances are approved by EPA, or as applicable

UDEQ, or when, despite best efforts, KUCC is unable to obtain release or

subordination of such prior liens or encumbrances).

Within 15 days of the approval and acceptance of the easement and the title evidence by EPA, or

as applicable UDEQ, KUCC shall update the title search and, if it is determined that nothing has

occurred since the effective date of the commitment to affect the title adversely, the easement

shall be recorded with the Recorder's Office of Salt Lake County. Within 30 days of the

recording of the easement, KUCC shall provide EPA, or as applicable UDEQ, with a final title

insurance policy, or other final evidence of title acceptable to EPA, or as applicable UDEQ, and a

certified copy of the original recorded easement showing the clerk's recording stamps. If

easement is to be conveyed to the United States, the easement and title evidence (including final

title evidence) shall be prepared in accordance with the U.S. Department of Justice Title

Standards 2001, and approval of the sufficiency of title must be obtained as required by 40

U.S.C. § 255.

27.     For purposes of Paragraph 26 of this Consent Decree, "best efforts" includes the

payment of reasonable sums of money in consideration of access, access easements, land/water

use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien

or encumbrance. A "reasonable sum of money" shall mean an amount of monetary consideration which, taking into account the possible transaction costs (including but not limited to appraisal costs, attorneys fees, court costs, and consultant/expert witness fees) that would likely be incurred in obtaining the rights in question by judicial or other means, is not significantly out of proportion with the fair market value of the rights to be obtained. If KUCC is unable to obtain access, despite using its best efforts to do so, KUCC shall promptly notify the United States, or as applicable the State, in writing, and shall include in that notification a summary of the steps that KUCC has taken to attempt to comply with Paragraph 26 of this Consent Decree. The United States, or as applicable the State, may as they deem appropriate, assist KUCC in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. KUCC shall reimburse the United States in accordance with the procedures in Section XVII (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States, or as applicable the State, in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

28.     With regard to the property, including easement rights, owned or controlled by KUCC which overlies or is in close proximity to the Zone A plume as depicted on Appendix A,

KUCC shall within 45 Days after the Effective Date of this Consent Decree execute and record a Drilling Restriction in the form attached as Appendix D.

29.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## XI. REPORTING REQUIREMENTS

30.     KUCC shall submit reports to EPA and UDEQ as provided in the OM&R Plan. If requested by EPA or UDEQ, KUCC shall also provide briefings for EPA and UDEQ to discuss the progress of the Work.

31.     Upon the occurrence of any event during and in connection with the performance of Work that KUCC is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), KUCC shall within 24 hours of the onset of such event orally notify the EPA and State Project Coordinators or the Alternate EPA and State Project Coordinators (in the event of the unavailability of the EPA and the State Project Coordinators), or, in the event that neither the EPA and State Project Coordinators or Alternate EPA and State Project Coordinators is available, the Emergency Response Section, Region 8, United States Environmental Protection Agency and State

Emergency Response Division. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

32.     Within 20 days of the onset of such an event, KUCC shall furnish to EPA and UDEQ a written report, signed by KUCC's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, KUCC shall submit a report setting forth all actions taken in response thereto.

33.     All reports and other documents submitted by KUCC to EPA and UDEQ which purport to document KUCC's compliance with the terms of this Consent Decree shall be signed by an authorized representative of KUCC.

## XII. APPROVAL OF PLANS AND OTHER SUBMISSIONS

34.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, or as applicable UDEQ, shall:  (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that KUCC modify the submission; or (e) any combination of the above. However, EPA, or as applicable UDEQ, shall not modify a submission without first providing KUCC at least one notice of deficiency and an opportunity to cure within thirty days, except where to do so would cause serious disruption to the Work or where previous submissions have

-38-

been disapproved due to material defects and the deficiencies in the submission under

consideration indicate a bad faith lack of effort to submit an acceptable deliverable.  In the event

EPA, or as applicable UDEQ, has not within 60 days after the submission affirmatively approved

or denied it KUCC may deem the submission denied and invoke the dispute resolution

procedures of Section XX.

35.     In the event of approval, approval upon conditions, or modification by EPA, or as

applicable UDEQ,  pursuant to Paragraph 34(a), (b), or (c), KUCC shall proceed to take any

action required by the plan, report, or other item, as approved or modified by EPA, or as

applicable UDEQ, subject only to their right to invoke the Dispute Resolution procedures set

forth in Section XX (Dispute Resolution) with respect to the modifications or conditions made by

EPA.  In the event that EPA, or as applicable UDEQ, modifies the submission to cure the

deficiencies pursuant to Paragraph 34(c) and the submission has a material defect, the United

States and the State retain the right to seek stipulated penalties as provided in Section XXI

(Stipulated Penalties).

36.     Resubmission of Plans.

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 34(d),

KUCC shall, within thirty days or such longer time as specified by EPA, or as applicable UDEQ,

in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.

Any stipulated penalties applicable to the submission, as provided in Section XXI (Stipulated

-39-

Penalties), shall accrue during the thirty-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 37 and 38.

    b.  Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 34(d), KUCC shall proceed, at the direction of EPA, or as applicable UDEQ, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve KUCC of any liability for stipulated penalties under Section XXI (Stipulated Penalties).

    37.  In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, or as applicable UDEQ, EPA, or as applicable UDEQ, may again require KUCC to correct the deficiencies, in accordance with the preceding Paragraphs. EPA, or as applicable UDEQ, also retains the right to modify or develop the plan, report or other item. KUCC shall implement any such plan, report, or item as modified or developed by EPA, or as applicable UDEQ, subject only to its right to invoke the procedures set forth in Section XX (Dispute Resolution).

    38.  If upon resubmission, a plan, report, or item is disapproved or modified by EPA, or as applicable UDEQ, due to a material defect, KUCC shall be deemed to have failed to submit such plan, report, or item timely and adequately unless KUCC invokes the dispute resolution procedures set forth in Section XX (Dispute Resolution) and EPA's action is overturned pursuant

-40-

to that Section.  The provisions of Section XX (Dispute Resolution) and Section XXI (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XXI (Stipulated Penalties).

39.    All plans, reports, and other items required to be submitted under this Consent Decree shall, upon approval or modification by EPA, or as applicable UDEQ, be enforceable under this Consent Decree.  In the event EPA, or as applicable UDEQ, approves or modifies a portion of a plan, report, or other item required to be submitted under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

XIII. PROJECT COORDINATORS

40.    Within 20 days of lodging this Consent Decree KUCC, EPA, and UDEQ will notify each other, in writing, of the name, address, and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 15 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made.  KUCC's Project Coordinator shall be subject to disapproval by EPA, or as applicable UDEQ, and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  KUCC's Project Coordinator shall not

be an attorney for KUCC or any affiliate of KUCC. He or she may assign other representatives, including other contractors, to serve as a representative for oversight of performance of daily operations during remedial activities.

41. EPA and UDEQ may designate other representatives, including, but not limited to, EPA and UDEQ employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the OU2 Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

42. The Project Coordinators for EPA, and/or UDEQ, and KUCC will meet at least on annually to: (i) review the past year's Work by KUCC and the level of oversight of such past year's Work, (ii) discuss expected Work during the coming year and the appropriate level of oversight by EPA and/or UDEQ, and (iii) establish a working budget for the applicable agency's oversight of KUCC's activities during the upcoming year.

-42-

## XIV. ASSURANCE OF ABILITY TO COMPLETE WORK

43.     Within 45 days of entry of the Effective Date of this Consent Decree, KUCC shall establish and thereafter maintain financial assurance in an amount necessary to complete the work pursuant to the OM&R Plan as provided in this Section.

        a.     The amount of such financial assurance shall be the net present value of the estimated cost of the work pursuant to the OM&R Plan during the 40-year period following the date that such amount of financial assurance is determined or adjusted pursuant to this Section. The initial amount of financial assurance shall be $15 million. The amount of the financial assurance shall be updated or adjusted in accordance with Appendix E.

        b.     The Parties shall reevaluate the financial assurance coverage and amount at least every five years as part of the periodic review process described in Section VII (Remedy Review). Any of the Parties may request a reevaluation of the financial assurance amount if there has been a material change in the estimated costs to perform any remaining work pursuant to the OM&R Plan or other relevant circumstances such as a change in the planned date of closure of KUCC's mining and mineral processing activities.

        c.     Following the reevaluation of the amount of financial security as set forth in the preceding Paragraph 43.b., EPA shall, in consultation with UDEQ, determine whether an adjustment to the amount of financial assurance is appropriate. EPA's decision may be disputed

-43-

pursuant to Section XX (Dispute Resolution). KUCC shall provide the amount of financial assurance in accordance with the final administrative or judicial decision.

44.     KUCC shall provide a minimum of ten percent (10%) of the required amount of financial assurance in one or more of the following forms:

      a.     one or more surety bonds;

      b.     one or more irrevocable letters of credit; or

      c.     a fully-funded trust fund.

Any irrevocable letter of credit must be issued for a period of at least one year, and provide that the expiration date will be automatically extended for a period of at least one year unless, no less than 120- days before the current expiration date, the issuing institution notifies KUCC, EPA, and UDEQ by certified mail of a decision not to extend the expiration date. If KUCC does not establish alternate financial assurance as specified in this Section XIV and obtain EPA's approval, in consultation with UDEQ, of such alternate financial assurance at least 30 days prior to the expiration date of the letter of credit (as set forth in the issuing institution's initial notice or as may be extended by the issuing institution), EPA may draw on the letter of credit and deposit such funds in the Kennecott Site-Wide Special Account referenced in Paragraphs 52 and 53.

45. KUCC may elect to satisfy the remaining amount of the required financial assurance by one or more of the means set forth in Paragraph 44 or by one or both of the following:

a. demonstrating that KUCC satisfies the requirements of 40 C.F.R. § 264.143(f)(1) or such other financial test as may be approved by the United States, in consultation with the State,

b. providing a guarantee by a parent corporation, a subsidiary, or an unrelated corporation that has a substantial business relationship with KUCC, so long as the guarantor satisfies the requirements of 40 C.F.R. § 264.143(f)(1) or such other financial assurance test as may be approved by the United States, in consultation with the State.

For purposes of the foregoing subparagraphs a. and b., references in 40 C.F.R. § 264.143(f)(1)(i)(B) to "sum of current closure and post-closure cost estimates and the current plugging and abandonment cost estimates" shall mean: (i) the amount of financial assurance established pursuant to Paragraph 43, less the portion thereof that is covered by another approved form of financial assurance pursuant to this Section XIV; plus (ii) any other financial obligations of KUCC or the guarantor, as the case may be, under CERCLA or RCRA that are secured through a demonstration under 40 C.F.R. § 264.143(f) or other approved financial test, to the extent such obligations are not included as liabilities in the financial statements of KUCC or the guarantor.

-45-

46.    If KUCC seeks to demonstrate the ability to complete Work by means of the financial test or a corporate guarantee pursuant to Paragraphs 45.a. or 45.b., KUCC shall submit annually the information required by 40 C.F.R. § 143(f)(3) or other financial test approved by the United States in consultation with the State. In the event EPA determines, in consultation with UDEQ, that the applicable financial assurance test and reporting requirements have not been satisfied by the guarantor or KUCC, KUCC shall within 60 days of receipt of notice of EPA's determination, obtain and present to EPA for approval, which shall not be unreasonably withheld or delayed, one of the other forms of financial assurance listed in Paragraphs 44 and 45. KUCC's inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

47.    Subject to the requirements of Paragraphs 44 and 45 above, and upon notice to and approval by EPA, in consultation with UDEQ, KUCC may at any time change the form of financial assurance, including without limitation the changing of guarantors. Such approval by EPA, in consultation with UDEQ, shall not be unreasonably withheld or delayed. In the event of a dispute, KUCC may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XV. CERTIFICATION OF COMPLETION

48.    Completion of Replacement Activities.

a.      Within 90 days after KUCC concludes that all Work associated with

Replacement Activities pursuant to an approved Closure Transition Plan have been fully

performed and the relevant Performance Standards have been attained, KUCC shall schedule and

conduct a pre-certification inspection to be attended by KUCC, EPA, and UDEQ. If, after the

pre-certification inspection, KUCC still believes that the Replacement Activities have been fully

performed and the relevant Performance Standards have been attained, KUCC shall submit a

written report requesting certification to EPA for approval, with a copy to the State, pursuant to

Section XII (Approval of Plans and Other Submissions) within 30 days of the inspection. In the

report, a registered professional engineer and KUCC's Project Coordinator shall state that the

Replacement Activities have been completed in full satisfaction of the requirements of this

Consent Decree. The written report shall include as-built drawings signed and stamped by a

professional engineer. The report shall contain the following statement, signed by a responsible

corporate official of a KUCC or KUCC's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the
> information contained in or accompanying this submission is true, accurate and
> complete. I am aware that there are significant penalties for submitting false
> information, including the possibility of fine and imprisonment for knowing
> violations.

If, after completion of the pre-certification inspection and receipt and review of the written

report, EPA determines, in consultation with UDEQ, that the Replacement Activities or any

portion thereof have not been completed in accordance with this Consent Decree or that the

relevant Performance Standards have not been achieved, EPA will notify KUCC in writing of the

activities that must be undertaken by KUCC pursuant to this Consent Decree to complete the Replacement Activities and achieve the relevant Performance Standards; provided, however, that EPA may only require KUCC to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the scope of the remedy selected in the OU2 ROD, or as the remedy or any components of the remedial action may be modified in accordance with CERCLA and the NCP.  EPA will set forth in the notice a schedule for performance of such activities consistent with this Consent Decree or require KUCC to submit a schedule to EPA for approval pursuant to Section XII (Approval of Plans and Other Submissions).  KUCC shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution).

          b.      If EPA concludes, in consultation with UDEQ, based on the initial or any subsequent report requesting Certification of Completion, that the Replacement Activities have been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to KUCC.  This certification shall constitute the Certification of Completion of the Replacement Activities for purposes of this Consent Decree, including, but not limited to, Section XXII (Covenants Not to Sue by the Plaintiffs).  Certification of Completion of the Replacement Activities shall not affect KUCC's obligations under this Consent Decree.

49.    Completion of the Work.

a.    Within 90 days after KUCC concludes that all phases of the Work have been fully performed, and the final Cleanup Levels have been achieved, KUCC shall schedule and conduct a pre-certification inspection to be attended by KUCC, EPA, and UDEQ. If, after the pre-certification inspection, KUCC still believes that the Work has been fully performed, KUCC shall submit a written report by a registered professional engineer or registered professional geologist stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of KUCC or KUCC's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA determines, in consultation with UDEQ, that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify KUCC in writing of the activities that must be undertaken by KUCC pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require KUCC to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the scope of the remedy selected in the OU2 ROD, or as the remedy or any components of the remedial action may be modified in accordance with CERCLA and the NCP. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent

-49-

Decree, the Final Design for Remedial Action, the OM&R Plan, or as applicable a Closure

Transition Plan, or require KUCC to submit a schedule to EPA for approval pursuant to Section

XII (Approval of Plans and Other Submissions). KUCC shall perform all activities described in

the notice in accordance with the specifications and schedules established therein, subject to their

right to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution).

      b.    If EPA concludes, in consultation with UDEQ, based on the initial or any

subsequent request for Certification of Completion by KUCC, that the Work has been performed

in accordance with this Consent Decree, EPA will so notify KUCC in writing.

## XVI. EMERGENCY RESPONSE

      50.    In the event of any action or occurrence during the performance of the Work

which causes or threatens a release of Waste Material that constitutes an emergency situation or

that may present an immediate threat to public health or welfare or the environment, KUCC

shall, subject to Paragraph 51, immediately take all appropriate action to prevent, abate, or

minimize such release or threat of release, and shall immediately notify the EPA and State

Project Coordinators, or, if the Project Coordinator is unavailable, Alternate EPA and State

Project Coordinators. If neither of these persons is available, KUCC shall notify the EPA

Emergency Response Branch, Region 8, and the State Emergency Response Division. KUCC

shall take such actions in consultation with EPA's Project Coordinator or other available

authorized EPA officer and in accordance with all applicable provisions of any applicable plans

or documents developed pursuant to the Final Design for Remedial Action, the OM&R Plan, and/or the Closure Transition Plan. In the event that KUCC fails to take appropriate response action as required by this Section, and EPA, or as applicable the State, takes such action instead, KUCC shall reimburse EPA, or as applicable the State, all costs of the response action not inconsistent with the NCP pursuant to Section XVII (Payments for Response Costs).

51.     Nothing in the preceding Paragraph 50 or in this Consent Decree shall be deemed to limit any authority of the United States or the State to (a) take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the OU2 Site, or (b) direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the OU2 Site, subject to Section XXII (Covenants Not to Sue by the Plaintiffs).

## XVII. PAYMENTS OF RESPONSE COSTS

52.     Payment of United States' Past Response Costs.

a.     Within 30 days of the Effective Date, KUCC shall pay to EPA $5,007,200.16 in payment for Past Response Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number 2006V00225, EPA OU2 Site/Spill ID Number 08 1B, and DOJ Case Number 90-11-2-07195/3. Payment shall be made in accordance

with instructions provided to KUCC by the Financial Litigation Unit of the United States

Attorney's Office for the District of Utah following lodging of the Consent Decree. Any

payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited

on the next business day.

        b.     At the time of payment, KUCC shall send notice that payment has been

made to the United States, and any accompanying transmittal letter(s), to the United States as

provided in Section XXVII (Notices and Submissions), and to:

        Maureen O'Reilly
        Enforcement Specialist, Kennecott OU2 Site
        U.S. Environmental Protection Agency
        (8ENF-RC)
        1595 Wynkoop Street
        Denver, Colorado 80202-1129

and to:

        Martha Walker
        Financial Management Section
        U.S. Environmental Protection Agency
        (8TMS-F)
        1595 Wynkoop Street
        Denver, Colorado 80202-1129

        c.     The total amount to be paid by KUCC pursuant to Subparagraph 52.a shall

be deposited in the Kennecott Site-Wide Special Account within the EPA Hazardous Substance

Superfund to be retained and used to conduct or finance response actions at or in connection with

the OU2 Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

     53.    <u>Payment of United States' Future Response Costs</u>.

     a.    KUCC shall pay to the United States Future Response Costs not

inconsistent with the National Contingency Plan. EPA will on an annual basis send KUCC a bill

requiring payment that includes an Itemized Cost Summary. KUCC shall make all payments

within 30 days of KUCC's receipt of each bill requiring payment, except as otherwise provided

in Paragraph 54. KUCC shall make all payments to EPA required by this Paragraph by a

certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund,"

referencing the name and address of the party making the payment, EPA OU2 Site/Spill ID

Number  08 1B, and DOJ Case Number 90-11-2-07195/3. KUCC shall send the check(s) to:

> Mellon Bank
> EPA Region VIII
> Attn: Superfund Accounting
> Lockbox 360859
> Pittsburgh, Pennsylvania 15251-6859

Federal Express, Airborne, Etc.:

> Environmental Protection Agency 360859
> Mellon Client Service Center Rm. 154-0670
> 500 Ross Street
> Pittsburgh, PA 15262-0001

     b.    At the time of payment, KUCC shall send notice that payment has been made to

the United States, to EPA, and the Regional Finance Management Officer, in accordance with

Section XXVII (Notices and Submissions).

c.     The total amount to be paid by KUCC shall be deposited in the Kennecott Site-Wide Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the OU2 Site, or to be transferred by EPA to the Hazardous Substance Superfund.

54.     KUCC may contest payment of any Future Response Costs under Paragraph 53 if KUCC determines that the United States made an accounting error or if KUCC alleges that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States. Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, KUCC shall within the 30 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 53. Simultaneously, KUCC shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Utah and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. KUCC shall send to the United States, as provided in Section XXVII (Notices and Submissions), a copy of the transmittal letter and check (or wire transfer documentation) paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.

Simultaneously with establishment of the escrow account, KUCC shall initiate the Dispute

Resolution procedures in Section XX (Dispute Resolution). If the United States prevails in the

dispute, within 5 days of the resolution of the dispute, KUCC shall pay the sums due (with

accrued interest) to the United States in the manner described in Paragraph 53. If KUCC prevails

concerning any aspect of the contested costs, KUCC shall pay that portion of the costs (plus

associated accrued interest) for which they did not prevail to the United States in the manner

described in Paragraph 53; KUCC shall be disbursed any balance of the escrow account. The

dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set

forth in Section XX (Dispute Resolution) shall be the exclusive mechanisms for resolving

disputes regarding KUCC's obligation to reimburse the United States for its Future Response

Costs.

        55.     In the event that the payments required by Subparagraph 52.a. are not made

within 30 days of the Effective Date or the payments required by Paragraph 53 are not made

within 30 days of KUCC's receipt of the bill, KUCC shall pay Interest on the unpaid balance.

The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the

Effective Date. The Interest on Future Response Costs shall begin to accrue on the date of the

bill. The Interest shall accrue through the date of KUCC's payment. Payments of Interest made

under this Paragraph shall be in addition to such other remedies or sanctions available to

Plaintiffs by virtue of KUCC's failure to make timely payments under this Section including, but

not limited to, payment of stipulated penalties pursuant to Section XXI (Stipulated Penalties).

KUCC shall make all payments required by this Paragraph in the manner described in Paragraph 53.

56.     Payments to the State. UDEQ activities shall be paid pursuant to the SSEA and a cooperative agreement between EPA and UDEQ. Nothing in this Consent Decree waives KUCC's obligation to pay state fees and state permit costs under applicable state law.

## XVIII. INDEMNIFICATION AND INSURANCE

57.     KUCC's Indemnification of the United States and the State.

a.     The United States and the State do not assume any liability by entering into this agreement or by virtue of any designation of KUCC as EPA's authorized representatives under Section 104(e) of CERCLA. KUCC shall indemnify, save and hold harmless the United States and the State and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of KUCC, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of KUCC as EPA's authorized representatives under Section 104(e) of CERCLA. Further, KUCC agrees to pay the United States and the State all costs they incur including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on

-56-

negligent or other wrongful acts or omissions of KUCC, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of KUCC in carrying out activities pursuant to this Consent Decree. Neither KUCC nor any such contractor shall be considered an agent of the United States or the State.

        b.      The United States and the State shall give KUCC notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 58, and shall consult with KUCC prior to settling such claim.

        58.      KUCC waives all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of KUCC and any person for performance of Work on or relating to the OU2 Site, including, but not limited to, claims on account of construction delays. In addition, KUCC shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of KUCC and any person for performance of Work on or relating to the OU2 Site, including, but not limited to, claims on account of construction delays.

## XIX. Force Majeure

59.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of KUCC, of any entity controlled by KUCC, or of KUCC's contractor(s), that delays or prevents the performance of any obligation under this Consent Decree despite KUCC's best efforts to fulfill the obligation. The requirement that KUCC exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

60.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, KUCC shall notify orally EPA and State Project Coordinators or, in his or her absence, EPA and the State's Alternate Project Coordinators or, in the event both of EPA's designated representatives are unavailable, the Assistant Regional Administrator, Office of Ecosystems Protection and Remediation, EPA Region 8, and the State Division Director, Environmental Response and Remediation Division, within 3 business days of when KUCC first knew that the event might cause a delay. Within 7 business days thereafter, KUCC shall provide in writing to EPA and UDEQ an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for

implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; KUCC's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of KUCC, such event may cause or contribute to an endangerment to public health, welfare or the environment. KUCC shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude KUCC from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. KUCC shall be deemed to know of any circumstance of which KUCC, any entity controlled by KUCC, or KUCC's contractors knew or should have known.

61.     If EPA, or as applicable UDEQ, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, or as applicable UDEQ, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, or as applicable UDEQ, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA, or as applicable UDEQ, will notify KUCC in writing of its decision. If EPA, or as applicable UDEQ, agrees that the delay is attributable to a force majeure event, EPA, or as applicable UDEQ, will notify KUCC in writing of the length of the extension, if any, for

performance of the obligations affected by the force majeure event.

62.     If KUCC elects to invoke the dispute resolution procedures set forth in Section XX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, KUCC shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that KUCC complied with the requirements of Paragraphs 59 and 60,above. If KUCC carries this burden, the delay at issue shall be deemed not to be a violation by KUCC of the affected obligation of this Consent Decree identified to EPA and the Court.

## XX. DISPUTE RESOLUTION

63.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree, provided however, that: (1) disputes between KUCC and the State arising under or with respect to State permits or state law independent of this Consent Decree will be resolved under state laws; and (2) the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of KUCC that have not been disputed in accordance with this Section; and (3) disputes between EPA and UDEQ will be resolved pursuant to the SSEA.

64.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

65.     Statements of Position.

a.      In the event that the EPA and KUCC cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding upon KUCC unless, within 20 days after the conclusion of the informal negotiation period, KUCC invokes the formal dispute resolution procedures of this Section by serving on the United States, with a copy to UDEQ, a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by KUCC. The Statement of Position shall specify KUCC's position as to whether formal dispute resolution should proceed under Paragraph 66 or Paragraph 67.

b.      Within 20 days after receipt of KUCC's Statement of Position, EPA will serve on KUCC its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should

-61-

proceed under Paragraph 66 or 67. Within 20 days after receipt of EPA's Statement of Position, KUCC may submit a Reply.

        c.     If there is disagreement between EPA and KUCC as to whether dispute resolution should proceed under Paragraph 66 or 67, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if KUCC ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 66 and 67.

        66.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by KUCC regarding the validity of the OU2 ROD's provisions.

        a.     An administrative record of the dispute shall be maintained by EPA and shall include all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of

-62-

position by the parties to the dispute.

      b.     The Assistant Regional Administrator, Office of Ecosystems Protection and Remediation, EPA Region 8, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 66.a. This decision shall be binding upon KUCC, subject only to the right to seek judicial review pursuant to Paragraph 66.c and d.

      c.     Any administrative decision made by EPA pursuant to Paragraph 66.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by KUCC with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to KUCC's motion.

      d.     In proceedings on any dispute governed by this Paragraph, KUCC shall have the burden of demonstrating that the decision of the Assistant Regional Administrator, Office of Ecosystems Protection and Remediation, EPA Region 8, is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 66.a.

      67.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record

under applicable principles of administrative law, shall be governed by this Paragraph.

     a.    Following receipt of KUCC's Statement of Position submitted pursuant to Paragraph 65, the Assistant Regional Administrator, Office of Ecosystems Protection and Remediation, EPA Region 8, will issue a final decision resolving the dispute. The Assistant Regional Administrator's decision shall be binding on KUCC unless, within 10 days of receipt of the decision, KUCC files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to KUCC's motion.

     b.    Notwithstanding Paragraph R of Section 1 (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

    68.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of KUCC under this Consent Decree, not directly in dispute, unless EPA or the Court agree otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 76. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable

provision of this Consent Decree.  In the event that KUCC does not prevail on the disputed issue,

stipulated penalties shall be assessed and paid as provided in Section XXI (Stipulated Penalties).

## XXI. STIPULATED PENALTIES

69.     KUCC shall be liable for stipulated penalties in the amounts set forth below (in

2006 Dollars) to the United States and the State, to be divided equally between EPA and UDEQ,

for KUCC's failure to comply with the requirements of this Consent Decree specified below,

unless excused under Section XIX (Force Majeure).  "Compliance" by KUCC shall include

completion of the activities under this Consent Decree, the OM&R Plan, the Closure Transition

Plan, and any plans or other documents approved by EPA, or as applicable UDEQ, pursuant to

this Consent Decree and within the specified time schedules established by and approved under

this Consent Decree.

| Violation | Stipulated Penalty |
|---|---|
| Failure to meet the minimum 60-month rolling average extraction rate for the core Zone A plume as set forth in the OU2 ROD. The 60-month rolling average period shall commence as of January 1, 2003. | $40,000 for each month that the minimum annual rolling average extraction rate is not met or exceeded. |

| | |
|---|---|
| Failure to contain the Zone A plume as set forth in the OU2 ROD. | $25,000 per month for the first six months and $50,000 for each month thereafter.  The accrual of stipulated penalties may, in the unreviewable discretion of EPA and UDEQ, be tolled during KUCC's implementation of a corrective action plan approved by EPA in consultation with UDEQ. |
| Failure to sample/monitor a Compliance Monitoring Well as specified in the OM&R Plan. | For each well:  $500 per day per violation during the first 10 days of noncompliance; $1,000 per day per violation from the 11th to 30th day of noncompliance; and $2,500 per day per violation thereafter. |
| Failure to submit any report or notification required pursuant to this Consent Decree or the OM&R Plan. | $250 per day per violation during the first 10 days of noncompliance; $500 per day per violation from the 11th to 30th day of noncompliance; and $1,500 per day per violation thereafter. |
| Failure to provide access to EPA or UDEQ as required by Section X of this Consent Decree. | $1,000 per day per violation. |

70. In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 87 (Work Takeover) of Section XXII (Covenants Not to Sue by the Plaintiffs), KUCC shall be liable for, in addition to the Future Response Costs referenced in Paragraph 87, a stipulated penalty as follows:

a. For each day that EPA performs the Work pursuant to Paragraph 87, an amount equal to $5,000 per day (in 2006 Dollars) until the earlier of (i) 180 days or (ii) such time that KUCC resumes performance of the Work;

b. If KUCC has not resumed performance of the Work within 180 days after EPA assumed performance of the Work, then KUCC shall pay a lump sum amount equal to 10% of the most current financial assurance amount established pursuant to Paragraph 43 of this Consent Decree, less the amount that KUCC has already paid pursuant to Paragraph 70.a.

71. All penalties shall begin to accrue on the day after the complete performance is due or the day a material violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) during the period, if any, beginning on the 31st day after the receipt by EPA, or as applicable UDEQ, of such a deficient submission that EPA, or as applicable UDEQ, modifies to cure a material defect under Section XII (Approval of Plans and Other Submissions) until the date that EPA, or applicable UDEQ, notifies KUCC of the submission's deficiency; (2) with respect to a decision by the Assistant Regional Administrator, Office of Ecosystems

-67-

Protection and Remediation, EPA Region 8, under Paragraph 66.b. or 67.a. of Section XX

(Dispute Resolution), during the period, if any, beginning on the 21st day after the date that

KUCC's reply to EPA's Statement of Position is received until the date that the Assistant

Regional Administrator issues a final decision regarding such dispute; (3) with respect to judicial

review by this Court of any dispute under Section XX (Dispute Resolution), during the period, if

any, beginning on the 31st day after the Court's receipt of the final submission regarding the

dispute until the date that the Court issues a final decision regarding such dispute; or (4) if

KUCC could not have had actual or constructive knowledge of a violation until being notified

that a violation occurred by EPA or UDEQ, in which case stipulated penalties shall not accrue

until KUCC is so notified by EPA or UDEQ. Nothing herein shall prevent the simultaneous

accrual of separate penalties for separate violations of this Consent Decree.

     72.     Following EPA's determination, in consultation with UDEQ, that KUCC failed to

comply with a requirement of this Consent Decree, EPA may give KUCC written notification of

the same and describe the noncompliance. EPA may send KUCC a written demand for the

payment of the penalties. However, penalties shall accrue as provided in the preceding

Paragraph 71 regardless of whether EPA has notified KUCC of a violation; provided, however,

that in the sole event KUCC could not have had actual or constructive knowledge of a violation

until being notified that a violation occurred then stipulated penalties shall not accrue until

KUCC is so notified by EPA, or as applicable UDEQ.

73.     All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days of KUCC's receipt from EPA of a demand for payment of the penalties, unless KUCC invokes the Dispute Resolution procedures under Section XX (Dispute Resolution).

a.     All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Kennecott South Zone OU2 Site/Spill ID # 08 1B, the DOJ Case Number 90-11-2-07195/2, and the name and address of the party making payment.  Checks shall be sent:

> By mail to:
>
> Mellon Bank
> EPA Region VIII
> Attn: Superfund Accounting
> Lockbox 360859
> Pittsburgh, Pennsylvania 15251-6859
>
> Or by Federal Express, Airborne, etc. to:
>
> Environmental Protection Agency 360859
> Mellon Client Service Center Rm. 154-0670
> 500 Ross Street
> Pittsburgh, PA 15262-0001.

Copies of check(s) paid pursuant to this Paragraph 73.a. and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVII (Notices and Submissions), and to:

Maureen O'Reilly
Enforcement Specialist, Kennecott OU2 Site
U.S. Environmental Protection Agency
(8ENF-RC)
1595 Wynkoop Street
Denver, Colorado 80202-1129

and to:

Martha Walker
Financial Management Section
U.S. Environmental Protection Agency
(8TMS-F)
1595 Wynkoop Street
Denver, Colorado 80202-1129

74.     All payments to the State under this Section shall be paid by certified or cashier's

check(s) made payable to "Department of Environmental Quality/Division of Environmental

Response and Remediation," shall indicate that the payment is for stipulated penalties, and shall

reference the EPA site ID number and the Utah designation "Kennecott South Zone OU2 -

Southwest Jordan Valley Ground Water site" the name and address of the party making payment.

Checks shall be sent to:

State of Utah
Department of Environmental Quality
Division of Environmental Response and Remediation
Attention - Accounting Office
P.O. Box 144840
Salt Lake City, Utah 84114-4840

75.     The payment of penalties shall not alter in any way KUCC's obligation to

complete the performance of the Work required under this Consent Decree.

-70-

76.     Penalties shall continue to accrue as provided in Paragraph 68 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to the United States and the State within 15 days of the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, KUCC shall pay all accrued penalties determined by the Court to be owed to the United States and the State within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.     If the District Court's decision is appealed by any Party, KUCC shall pay all accrued penalties determined by the District Court to be owing to the United States and the State into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the United States, the State, or to KUCC to the extent that they prevail.

77.     If KUCC fails to pay stipulated penalties when due, the United States or the State may institute proceedings to collect the penalties, as well as interest. KUCC shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 73.

-71-

78.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State from seeking any other remedies or sanctions available by virtue of KUCC's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree. Except as provided by Paragraph 86.a., nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the State to seek remedies or penalties for violations of state laws or state permits.

79.     Where a violation of this Consent Decree is also a violation of another statutory or regulatory requirement, KUCC shall be allowed a credit, for any Stipulated Penalties paid, against any statutory penalties imposed for such violation. Notwithstanding any other provision of this Section, the United States and the State may, in their unreviewable discretion, waive all or any part of their respective portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXII. COVENANTS NOT TO SUE BY THE PLAINTIFFS

80.     In consideration of the actions that have been and will be performed and the payments that will be made by KUCC under the terms of the Consent Decree, and except as

-72-

specifically provided in Paragraphs 81 - 85, the United States covenants not to sue or to take administrative action against KUCC: (a) pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, relating to the OU2 Site or the Work; and (b) pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, for Past Response Costs. These covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 52.a. of Section XVII (Payments for Response Costs), and are conditioned upon the satisfactory performance by KUCC of its obligations under this Consent Decree. These covenants not to sue extend only to KUCC and do not extend to any other person.

81.    United States' Reservations Regarding the Completed Remedial Action.

Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel KUCC:

        a.    to perform further response actions relating to the OU2 Site, or

        b.    to reimburse the United States for additional costs of response if subsequent to the date of EPA's acceptance of KUCC's certification of completion of the Remedial Action either:

            (1)    conditions at the OU2 Site, previously unknown to EPA, are discovered, or

-73-

(2)    information, previously unknown to EPA, is received, in whole or

in part,

and EPA determines that these previously unknown conditions or information together with any

other relevant information indicates that the Remedial Action is not protective of human health

or the environment.

82.    United States' Pre-certification Reservations Regarding Replacement Activities.

Notwithstanding any other provision of this Consent Decree, the United States reserves, and this

Consent Decree is without prejudice to, the right to institute proceedings in this action or in a

new action, or to issue an administrative order seeking to compel KUCC:

a.    to perform further response actions relating to the OU2 Site, or

b.    to reimburse the United States for additional costs of response if, prior to

certification of completion of Replacement Activities; either:

(1)    conditions at the OU2 Site, previously unknown to EPA, are

discovered, or

(2)    information, previously unknown to EPA, is received, in whole or

in part,

and EPA determines that these previously unknown conditions or information together with any

other relevant information indicates that the Replacement Activities are not protective of human health or the environment.

83.   United States' Post-certification Reservations Regarding Replacement Activities. Notwithstanding any other provision of this Consent Decree, the United States reserves. and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action. or to issue an administrative order seeking to compel KUCC:

        a.   to perform further response actions relating to the OU2 Site, or

        b.   to reimburse the United States for additional costs of response if, subsequent to Certification of Completion of the Replacement Activities either:

        (1)   conditions at the OU2 Site, previously unknown to EPA, are discovered. or

        (2)   information, previously unknown to EPA, is received, in whole or in part,

and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action and/or the Replacement Activities are not protective of human health or the environment.

84.   The information and conditions known to EPA shall include that information and

-75-

conditions known to EPA as set forth in the administrative record for the OU2 Site as of:

        a.     for purposes of Paragraph 81, the date of the lodging of this Consent Decree;

        b.     for purposes of Paragraph 82, the date of an amendment to the OU2 ROD selecting any Replacement Activities or establishing any new modified Performance Standards, or if the OU2 ROD is not amended, then the date of the approval by EPA, or as applicable UDEQ, of a Closure Transition Plan; and

        c.     for purposes of Paragraph 83, the date of the Certification of Completion of the Replacement Activities.

    85.    General reservations of rights. The United States reserves, and this Consent Decree is without prejudice to, all rights against KUCC with respect to all matters not expressly included within the United States' covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against KUCC with respect to:

        a.     claims based on a failure by KUCC to meet a requirement of this Consent Decree;

        b.     liability arising from the past, present, or future disposal, release, or threat of release of hazardous substances outside of the OU2 Site;

      c.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      d.     criminal liability;

      e.     liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

      f.     liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 11 (Modification of the OM&R Plan or Related Work Plans).

      86.    Covenant Not to Sue by the State.

      a.     In consideration of the actions that will have been and will be performed and the payments that will be made by KUCC under the terms of this Consent Decree, and except as specifically provided below, the State covenants not to sue or to take administrative action against KUCC pursuant to the Utah Hazardous Substances Mitigation Act ("Mitigation Act"), UCA Section 19-6-301 et seq., or UCA Section 19-6-115 of the Utah Solid and Hazardous Waste Act, relating to the OU2 Site. This covenant not to sue is conditioned upon the satisfactory performance by KUCC of its obligations under this Consent Decree. These covenants not to sue extend only to KUCC and do not extend to any other person.

        b.      Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order under the Mitigation Act or UCA Section 19-6-115 of the Utah Solid and Hazardous Waste Act seeking to compel KUCC to perform further response actions relating to the OU2 Site or reimburse for costs incurred by the State under the Mitigation Act if conditions at the OU2 Site, previously unknown to the State, qualify for action by the State under the Mitigation Act or UCA Section 19-6-115 of the Utah Solid and Hazardous Waste Act. Conditions known by the State shall include only information and conditions known to the State as of the date of the signing of this Consent Decree.

        c.      The State reserves, and this Consent Decree is without prejudice to, all rights against KUCC with respect to all matters not expressly included within the State's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the State reserves all rights against KUCC with respect to claims based on a failure of KUCC to meet a requirement of this Consent Decree, criminal liability, or liability for future violations of state law.

        d.      Nothing herein shall in any way limit, restrict, or modify the covenants or releases granted in the NRD Consent Decree, nor does this Consent Decree affect or in any way modify the obligations of KUCC under the NRD Consent Decree and/or the 3-Party Agreement.

-78-

87.    Work Takeover.

(a)    In the event EPA determines that KUCC has (i) ceased implementing any portion of the Work, or (ii) is seriously or repeatedly deficient or late in its performance of the Work, or (iii) is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to KUCC. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide KUCC a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

(b)    If, after expiration of the 10-day notice period specified in Paragraph 87(a), KUCC has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify KUCC in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 87(b). In the event EPA implements a Work Takeover EPA shall not unnecessarily interfere with KUCC's ongoing mining operation. If approved in writing by EPA, or as may be directed following dispute resolution proceedings as set forth in Section XX (Dispute Resolution), KUCC may re-assume the performance of the Work.

(c)    KUCC may invoke the procedures set forth in Section XX (Dispute

-79-

Resolution), Paragraph 66, to dispute EPA's implementation of a Work Takeover under Paragraph 87(b) or EPA's refusal to allow KUCC to re-assume the performance of the Work. However, notwithstanding KUCC's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 87(b) until the earlier of: (i) the date that KUCC remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (ii) the date that a final decision is rendered in accordance with Section XX (Dispute Resolution), Paragraph 66, requiring EPA to terminate such Work Takeover.

(d) After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any financial assurance provided pursuant to Section XIV (Assurance of Ability to Complete Work) of this Consent Decree. Any unreimbursed costs incurred by EPA in performing Work under the Work Takeover shall be considered Future Response Costs that KUCC shall pay pursuant to Section XVII (Payments for Response Costs).

88. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXIII. COVENANTS BY KUCC

89. Covenant Not to Sue. Subject to the reservations in Paragraph 90, KUCC hereby covenants not to sue and agrees not to assert any claims or causes of action against the United

States or the State with respect to the OU2 Site, the Work, past response actions at the OU2 Site, and Past and Future Response Costs, as defined herein or this Consent Decree, including, but not limited to:

      a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

      b.     any claims against the United States or the State, including any department, agency or instrumentality of the United States or the State under CERCLA Sections 107 or 113 related to the OU2 Site, or

      c.     any claims arising out of response actions at or in connection with the OU2 Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 97 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 81 (United States' Reservations Regarding the Completed Remedial Action), 82 (United States' Pre-certification Reservations Regarding Replacement Activities), 83 (United States' Post-certification Reservations Regarding Replacement Activities), or 85 (General reservations of rights), but only to the extent that

KUCC's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

90. KUCC reserves, and this Consent Decree is without prejudice to, claims against:

a. the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of KUCC's plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

b. The State arising directly or indirectly from or out of actions of employees of the State that would result in (i) liability to the State of Utah under Section 63-30d-301 of the Governmental Immunity Act of Utah (the "Act"), UCA Section 63-30d-101 et seq, or (ii) individual liability for actions not covered by the Act as indicated in Sections 63-30d-202 and -

902 of the Act, as determined in a court of law.

91.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

92.     Except as expressly stated in the preceding Paragraphs 89 and 90, KUCC does not waive any claims or causes of action it may now have or in the future it may have against any person.

## XXIV. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

93.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law.  Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the OU2 Site against any person not a Party hereto.

94.     The Parties agree, and by entering this Consent Decree this Court finds, that KUCC is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this

Consent Decree. The matters addressed in this settlement are the remedial action, response actions taken or to be taken, Work conducted or to be conducted, OM&R activities, and all response costs incurred and to be incurred by the United States or any other person with respect to the OU2 Site. The matters addressed in this settlement do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event that the United States asserts rights against KUCC coming within the scope of such reservations. Further, the matters addressed in this settlement do not include any rights or liabilities created by or applicable to the NRD Consent Decree between KUCC and the State or any right any person may have as to any quantity or quality of groundwater within or near the OU2 Site.

95.    KUCC agrees that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree it will notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

96.    KUCC also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree it will notify in writing the United States and the State within 10 days of service of the complaint on KUCC. In addition, KUCC shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

97. Waiver of Claim-Splitting Defenses. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the OU2 Site, KUCC shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXII (Covenants Not to Sue by the Plaintiffs).

## XXV. ACCESS TO INFORMATION

98. KUCC shall provide to EPA and UDEQ, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the OU2 Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. KUCC shall also make available to EPA and UDEQ, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

99. Business Confidential and Privileged Documents.

a. KUCC may assert business confidentiality claims covering part or all of

-85-

the documents or information submitted to the United States under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection now specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified KUCC that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to KUCC. KUCC may assert business confidentiality claims covering part or all of the documents or information submitted to the State under this Consent Decree to the extent permitted by and in accordance with the Utah Government Records Access and Management Act, UCA Sections 63-2-101 et seq.

        b.      KUCC may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law, or as applicable state law. If KUCC asserts such a privilege in lieu of providing documents, KUCC shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by KUCC. However, no documents, reports or other information created or

generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

100. No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling. analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the OU2 Site.

## XXVI. RETENTION OF RECORDS

101. KUCC shall maintain records or documents as provided in the OM&R Plan.

102. KUCC shall notify the United States and the State at least 90 days prior to the destruction of any records or documents which KUCC is required to keep pursuant to the OM&R Plan, and, upon request by the United States or the State, KUCC shall deliver any such records or documents to EPA or as applicable UDEQ.

## XXVII. Notices and Submissions

103. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified

-87-

herein shall constitute complete satisfaction of any written notice requirement of the Consent

Decree with respect to the United States, EPA, the State, and KUCC, respectively.

As to the United States:

      Chief, Environmental Enforcement Section
      P.O. Box 7611
      Ben Franklin Station
      Washington, DC 20044-7611

As to EPA:

      Rebecca Thomas
      Remedial Project Manager, (EPR-SR)
      U.S. Environmental Protection Agency
      1595 Wynkoop Street
      Denver, Colorado 80202-1129

      and

      Mia Wood
      Enforcement Attorney, (8ENF-L)
      U.S. Environmental Protection Agency
      1595 Wynkoop Street
      Denver, Colorado 80202-1129

As to the State:

      Doug Bacon, State Project manager
      Utah Department of Environmental Quality
      288 North 1460 West
      Salt Lake City, Utah   84114

      and

Fred. G. Nelson
Assistant Attorney General
160 E 300 S
Salt Lake City, Utah   84114

As to KUCC:

CERLCA Project Coordinator
ATTN:  ENVIRONMENTAL DEPARTMENT
Kennecott Utah Copper Corporation
P.O. Box 6001
Magna, Utah 84044-6001

With a copy to:

General Counsel
ATTN: LEGAL DEPARTMENT
Kennecott Utah Copper Corporation
P.O. Box 6001
Magna, Utah 84044-6001


## XXVIII. Effective Date


104.    The effective date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court, except as otherwise provided herein.


## XXIX. Retention of Jurisdiction


105.    This Court retains jurisdiction over both the subject matter of this Consent Decree

and KUCC for the duration of the performance of the terms and provisions of this Consent

Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such

further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XX (Dispute Resolution) hereof.

## XXX. APPENDICES

106. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is a map of the OU2 Site.

"Appendix B" is the OU2 ROD and ESDs.

"Appendix C" is the OM&R Plan.

"Appendix D" is the Drilling Restriction by KUCC.

"Appendix E" is the Financial Assurance Calculation Method, Scope, and Assumptions.

## XXXI. COMMUNITY RELATIONS

107. KUCC agrees to participate in periodic Technical Review Committee Meetings unless such requirement is amended by EPA, or as applicable UDEQ. KUCC agree to provide funds for technical assistance to communities, including technical assistance grants to qualified groups.

## XXXII. MODIFICATION

108.    Schedules for the completion of any Work specified in this Consent Decree, the

OM&R Plan, the Closure Transition Plan, or other work plan to be approved in the future

pursuant to any requirement of this Consent Decree, and any changes to the Financial Assurance

Calculation Method, Scope, and Assumptions (Appendix E), may be modified by the mutual

agreement of EPA, UDEQ, and KUCC, and do not require the approval of the Court. All such

modifications shall be made in writing.

109.    No material modifications shall be made to the OM&R Plan, the Closure

Transition Plan, or other work plan to be approved in the future pursuant to any requirement of

this Consent Decree, without written notification to and written approval of the United States, the

State, KUCC, and the Court, if such modifications fundamentally alter the basic features of the

selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii). (2007) Prior to providing its

approval to any modification, EPA will provide UDEQ with a reasonable opportunity to review

and comment on the proposed modification. Except as provided in Paragraph 11, modifications

to the OM&R Plan, the Closure Transition Plan, or any other work plan to be approved in the

future pursuant to any requirement of this Consent Decree, that do not fundamentally alter the

basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may

be made by written agreement between EPA, after providing UDEQ with a reasonable

opportunity to review and comment on the proposed modification, and KUCC.

110. Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

111. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2) and 28 C.F.R. § 50.7, and comparable State law. The United States will provide an opportunity for a public hearing in the affected area, and a reasonable opportunity to comment on the Consent Decree prior to its final entry pursuant to Section 7003(d) of RCRA, 42 U.S.C. § 6973(d). The United States and the State reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. KUCC consents to the entry of this Consent Decree without further notice.

112. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIV. SIGNATORIES/SERVICE

113. Each undersigned representative of KUCC, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the Assistant

-92-

Attorney General for the State certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

114.    KUCC hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States or the State notifies KUCC in writing that they no longer support entry of the Consent Decree.

115.    KUCC shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of KUCC with respect to all matters arising under or relating to this Consent Decree. KUCC hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that KUCC need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXV. FINAL JUDGMENT

116.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree. The parties acknowledge that there are no representations,

agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

117. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and KUCC. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 20th DAY OF May , 2007.


UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:


_____

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division
Office of the Assistant Attorney General
950 Pennsylvania Ave., N.W.
Room 2143
Washington, D.C.  20530


_____

JERZL ("JERRY") L. ELLINGTON
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street  – 8th Floor
Denver, CO  80294

FOR THE U. S. ENVIRONMENTAL PROTECTION AGENCY:

MICHAEL T. RISNER
Acting Assistant Regional Administrator
Office of Enforcement, Compliance
and Environmental Justice,
Region 8
United States Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202-1129 999

CAROL RUSHIN
Assistant Regional Administrator
Office of Ecosystems Protection and Remediation,
Region 8
United States Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202-1129

FOR THE STATE OF UTAH BY AND THROUGH THE
UTAH DEPARTMENT OF ENVIRONMENTAL QUALITY:


DIANNE R. NIELSON, Ph.D
Executive Director
Utah Department of Environmental Quality
288 North 1460 West
Salt Lake City, Utah   84114


FRED G NELSON
Assistant Attorney General
Utah Attorney General's Office
160 E 300 S
Salt Lake City, Utah   84114

KENNECOTT UTAH COPPER CORPORATION:


By: _____

KAY PRIESTLY
Vice President Administration and Chief Financial Officer
Kennecott Utah Copper Corporation
8315 West 3595 South
Magna, Utah 84044-6001


By: _____

KENNETH R. BARRETT
Associate General Counsel
Kennecott Utah Copper Corporation
8315 West 3595 South
Magna, Utah 84044-6001


Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:        Corporation Service Company

Title:        Registered Agent

Address:     2180 South 1300 East, Suite 650
             Salt Lake City, UT 84106

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.